# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

         v.

Marcos Lopez Nunez,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 04-66 ADM/AJB
Civil No. 06-3835 ADM

---

Ann M. Anaya, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Marcos Lopez Nunez, *pro se*.

---

# I. INTRODUCTION

This matter is before the undersigned United States District Judge on Defendant Marcos Lopez Nunez's ("Defendant") Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 ("Motion") [Docket No. 49].[1] Defendant argues that his sentence should be vacated because the Court accepted his guilty plea without ensuring his full understanding of the nature of the charge as required by Rule 11 of the Federal Rules of Criminal Procedure. Defendant also argues that he should be resentenced in light of the United States Supreme Court's holding in United States v. Booker, 543 U.S. 220 (2005), because this Court erred in treating the federal sentencing guidelines as mandatory.  For the reasons set forth below, Defendant's Motion is denied.

---

[1] All docket references are to Criminal No. 04-66.

## II. BACKGROUND

In February of 2004, a federal grand jury returned a two-count Indictment [Docket No. 17] charging Defendant with conspiracy to distribute and possess with intent to distribute methamphetamine, and aiding and abetting with intent to distribute methamphetamine.  On April 7, 2004, Defendant entered into a Plea Agreement and Sentencing Stipulations ("Plea Agreement") [Docket No. 34] with the United States.  Defendant pled guilty to conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  Plea Agreement at 1.

The transcript of the April 7 hearing on Defendant's change of plea ("Plea Hearing Transcript") [Docket No. 41] reveals that the Court discussed the nature and effect of a guilty plea with Defendant at some length.  The Court began its examination of Defendant as follows:

> THE COURT:     I am going to ask you a number of questions to determine whether you know and understand the consequences and the rights that you give up by pleading guilty rather than going forward to trial.  If you don't understand any of these questions or you need further explanations, you need to let me know so that we slow down and make sure we have a meeting of the minds about this process.  Do you understand?
>
> DEFENDANT:     Yes.

Plea Hr'g Tr. at 4.  The Court confirmed that Defendant could understand his interpreter.  Id. at 5-6.  The Court asked whether Defendant "had enough time to talk to [his] lawyer," E. David Reyes, and whether he was "satisfied with [Reyes's] representation of [Defendant]."  Id. at 6. The Defendant responded affirmatively.  Id.  The Court asked a series of questions about Defendant's understanding that he was waiving his right to a jury trial and all attendant constitutional protections.  Id. at 6-10.

Next, the Court questioned Defendant about the charge to which he was pleading.

THE COURT:        Count 1 charges you with being part of a conspiracy to distribute
                  and to possess with intent to distribute methamphetamine.
                  Do you understand that part of this plea agreement is that you
                  plead guilty to that charge?

DEFENDANT:        Yes.

Id. at 11.  Following a discussion of the sentencing guidelines, the Court continued:

THE COURT:        Okay.  I am next going to read you the charge and ask you how
                  you plead.  When I finish, you should say either, "Guilty" or, "Not
                  guilty."
                  It's alleged that on January 2004, in the State and District of
                  Minnesota, the defendants, Marcos Lopez Nunez and Jose Naruzo
                  Luna Otanez, knowingly conspired with each other and with other
                  persons, whose names are known and unknown to the Grand Jury,
                  to distribute and to possess with intent to distribute in excess of
                  500 grams of a mixture or substance containing a detectable
                  amount of methamphetamine, which is a controlled substance, in
                  violation of Title 21 of the United States Code.
                  To that charge, which is conspiracy to distribute and possess with
                  intent to distribute methamphetamine, how do you plead?

MR. REYES:        May I interrupt, your Honor?

THE COURT:        You may.

MR. REYES:        I'm sorry.  With regard to the charge, he is going to admit that he
                  conspired with another, not with anyone in particular.

THE COURT:        Okay.  I'm only interested in whether you, Mr. Nunez, participated
                  in a conspiracy to distribute and to possess with intent to distribute
                  methamphetamine.  Are you guilty or not guilty of that charge?

DEFENDANT:        I am guilty.

THE COURT:        All right.

Id. at 15-16.  The Assistant United States Attorney then examined Defendant about the

particulars of his offense.  Id. at 16-17.

3

At a sentencing hearing on June 25, 2004, the Court sentenced Defendant to 135 months imprisonment and five years supervised release.  Sentencing Hr'g Tr. [Docket No. 42] at 8-10. Although at the April 7 hearing the parties had expected Defendant's criminal history to place him in category II of the sentencing guidelines, the presentence investigation revealed a criminal history of eight points, placing Defendant instead in category IV.  Id. at 3.  The Court determined that the category IV classification "overrepresent[ed] the seriousness of [Defendant's] past record" because two points derived from Defendant's probation status when he committed an alcohol-related driving offense in 2001.  Id. at 4.  This was determined to unfairly exacerbate Defendant's criminal history.  Id.  Defense counsel argued for a reduction to category II.  Id. at 6.  Instead, the Court adjusted the criminal history level to category III, which sets a sentence range of 135 to 168 months.  Id. at 5.  The Court sentenced Defendant as a category III offender to 135 months, the lowest sentence in the applicable guideline range.  Id. at 9.

Defendant filed a timely direct appeal to the United States Court of Appeals for the Eighth Circuit [Docket No. 38].  On appeal, Defendant did not raise the voluntariness of his guilty plea, nor did he question the constitutionality of the sentencing guidelines.  Rather, he contested this Court's assessment of his criminal history categorization.  United States v. Nunez, 137 Fed. Appx. 926, 927 (8th Cir. 2005).  On July 1, 2005, the Court of Appeals affirmed Defendant's sentence.  The United States Supreme Court denied Defendant's petition for certiorari.  Nunez v. United States, 126 S. Ct. 595 (2005).

### III. DISCUSSION

**A.     Standard of Review**

28 U.S.C. § 2255 provides persons in federal custody a limited opportunity to collaterally attack the constitutionality, jurisdictional basis or legality of the sentence prescribed by the court. See United States v. Addonizio, 442 U.S. 178, 185 (1979).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

**B.     Rule 11**

Rule 11(b)(1) of the Federal Rules of Criminal Procedure requires as follows:

> Before the court accepts a plea of guilty . . .  the defendant may be placed under oath, and the court must address the defendant personally in open court.  During this address, the court must inform the defendant of, and determine that the defendant understands, the following: . . . (G) the nature of each charge to which the defendant is pleading.

Defendant argues that his guilty plea was not voluntary because the Court failed to adequately inform him of the nature of the charges against him and determine that he understood them.

**1.     Procedural Bar to Rule 11 Claim**

Because Defendant failed to raise his Rule 11 issue on direct appeal, he is procedurally barred from collaterally raising the issue in a § 2255 motion absent a threshold showing of both cause for the default and prejudice.

> [A] collateral challenge may not do service for an appeal.  Normally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief.  [Defendant] is barred from bringing an action under 28 U.S.C. § 2255 for unappealed errors to which no contemporaneous objection was made, unless he can show both (1) cause excusing his double procedural default, and (2) actual prejudice resulting from the errors of which he complains.

Reid v. United States, 976 F.2d 446, 447-48 (8th Cir. 1992) (citing United States v. Frady, 456 U.S. 152, 165 (1982)) (internal citations omitted).

### a.   Cause Excusing Procedural Default: Ineffective Assistance of Counsel

Defendant asserts ineffective assistance of counsel at both the trial and appellate levels as the cause for his previous failures to raise the Rule 11 issue.  Mot. at 6.  "To establish ineffective assistance of counsel [Defendant] must demonstrate: (1) his attorney's performance was deficient and fell outside the range of reasonable professional assistance; and (2) he suffered prejudice by showing that, absent counsel's ineffective assistance, there is a reasonable probability that the result of the proceeding would have been different."  United States v. Taylor, 258 F.3d 815, 818 (8th Cir. 2001); see Strickland v. Washington, 466 U.S. 668, 687 (1984). Defendant must overcome a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  Taylor, 258 F.3d at 818 (citing Strickland, 466 U.S. at 689).

Defendant's sole basis for his ineffective assistance argument is his attorneys' failure to challenge the April 7 hearing's purported Rule 11 violations.  Mot. at 6.  Given the strong presumption against a finding of deficiency and the weakness, as discussed below, of the Rule 11 claim, the attorneys' failure to object appears well within the range of reasonable professional assistance.  Even if they committed an error, it does not rise to the level of "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In any case, "[i]f the defendant cannot prove prejudice, we need not address whether counsel's performance was deficient."  DeRoo v. United

<u>States</u>, 223 F.3d 919, 925 (8th Cir. 2000).  Thus the second prong of the ineffective assistance inquiry collapses into the second prong of the test for the appropriateness of collateral attack.

### b.      Prejudice Affecting Result

Even if Defendant's attorneys were not reasonably effective, their failure to raise a Rule 11 objection did not govern the result of Defendant's plea hearing or appeal.  There is no evidence that Defendant did not in fact understand the charge to which he pled, and Defendant does not appear to argue that further explanation would have dissuaded him from pleading guilty.  Because Defendant fails to demonstrate that his attorneys' failure to object at the Rule 11 hearing or raise the issue on appeal prejudiced the outcome of his plea hearing or his appeal, his ineffective assistance claim is an inadequate excuse for his procedural default.  Similarly, the absence of a showing of prejudice defeats the second prong of the collateral attack test.  Thus Defendant is procedurally barred from collaterally attacking his Rule 11 hearing.

### 2.      Merits of Rule 11 Claim

Even if Defendant's collateral challenge to his Rule 11 hearing were appropriate, it would fail.  "In determining whether the defendant understood the nature of the charges, it is necessary to examine the totality of the circumstances."  <u>United States v. Marks</u>, 38 F.3d 1009, 1011 (8th Cir. 1994).  Relevant circumstances include "whether the indictment gave him notice of the charge, whether he discussed the charge with his attorney or the judge, and . . . any other facts which are in the record."  <u>Id.</u>  "It is not always necessary . . . to explain formally the elements of an offense if the defendant understood the nature of the charge."  <u>Id.</u> at 1012.  "[W]here the indictment states the elements to be proven, such circumstances, standing alone,

give rise to a presumption that the defendant was informed of the nature of the charge against him."  United States v. Perez, 270 F.3d 737, 740 (8th Cir. 2001).

The totality of the circumstances indicates that Defendant understood the nature of the charges.  The Court opened the colloquy by explicitly urging Defendant to ask questions if he did not understand anything in the proceeding.  Plea Hr'g Tr. at 4.  The Indictment gave Defendant notice of the nature of the charges; indeed, Defendant acknowledges that the Indictment was read to him at the Change of Plea hearing.  Mem. in Supp. [Docket No. 50] at 2. Defendant informed the Court that he had "enough time" to speak with his lawyer.  Plea Hr'g Tr. at 6.  The Court identified the charge to which Defendant was pleading guilty.  Id. at 15.  The fact that Defendant's attorney interjected to specify that Defendant was pleading to conspiring with another person, not anyone in particular, is strong evidence that Defendant and his attorney were aware of and had discussed the meaning of conspiracy.  In short, there is no evidence that Defendant did not understand the charges and no evidence that further explanation of the definition of "conspiracy" would have changed the outcome of Defendant's plea hearing.  The record establishes that the nature of the charges was fully communicated to Defendant and that Defendant understood the charges.  Consequently, Defendant's Rule 11 challenge fails on the merits.

**C.** **United States v. Booker**

Defendant also argues that he is entitled to resentencing in light of United States v. Booker, 543 U.S. 220 (2005).  At the time of Defendant's sentencing, the federal sentencing guidelines were mandatory.  After Defendant was sentenced but before his appeal was decided, the United States Supreme Court held in Booker that the mandatory nature of the guidelines

violated the Sixth Amendment.  <u>Booker</u>, 543 U.S. at 245.  The Court therefore excised those

provisions of the guidelines that made them mandatory, rendering them advisory.  <u>Id.</u> at 246.

Defendant argues that at the time of his sentencing, the mandatory nature of the

guidelines prohibited the Court from considering the statutory minimum sentence of 120 months

imprisonment, and that this prohibition violated his Fifth Amendment right to due process of

law.  Defendant could have raised a <u>Booker</u> error claim on direct appeal.  <u>Id.</u> at 268 ("[W]e must

apply today's holdings . . . to all cases on direct review.").  Although Defendant's case was on

direct review at the time <u>Booker</u> was decided, he did not raise any <u>Booker</u> error issue.[2]  <u>See</u>

<u>United States v. Pirani</u>, 406 F.3d 543, 549-50 (8th Cir. 2005) (holding that petitioner's objections

to the presentence report and the application of various sentencing enhancements were

insufficient to preserve <u>Booker</u> claims for appeal).  Accordingly, this Court reviews Defendant's

claim for plain error.  Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be

considered even though it was not brought to the court's attention."); <u>Pirani</u>, 406 F.3d at 549.

Defendant has the burden of proving plain error by satisfying a four-part test.  <u>Id.</u> at 550.

 Defendant must demonstrate "(1) error, (2) that is plain, and (3) that affects substantial rights.  If

all three conditions are met, [a] court may then exercise its discretion to notice a forfeited error,

but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial

proceedings."  <u>Id.</u>  As the government concedes, the first two prongs of the test are satisfied.

"The district court (understandably) committed <u>Booker</u> error by applying the Guidelines as

mandatory, and the error is plain, that is, clear or obvious, at this time."  <u>Id.</u>

_____

[2] To explain his failure to raise a <u>Booker</u> error issue on appeal, Defendant again claims
ineffective assistance of counsel.  Defendant again cannot establish ineffective assistance
because there is no prejudice—that is, there is no evidence that Defendant's sentence would have
been different had the Court treated the guidelines as advisory.

To prevail on the third prong, however, Defendant must demonstrate not merely that the law was applied in error but that there is "a 'reasonable probability,' based on the . . . record as a whole, that but for the error he would have received a more favorable sentence." Id. at 552. Defendant asserts that under the mandatory guidelines, "the sentencing judge was prohibited from considering imposing the statutory minimum sentence of 120 months imprisonment." Mem. in Supp. at 7.  This assertion is insufficient.  Defendant must show that, had the Court treated the sentencing guidelines as merely advisory, he would have received a lesser sentence.

The mere fact that Defendant was sentenced at the low end of the guideline range does not give rise to a presumption that the Court would have sentenced him to a shorter term had the guidelines so permitted.  "[S]entencing at the bottom of the range is the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error."  Pirani, 406 F.3d at 553.  The Court exercised its discretion to reduce Defendant's criminal history level to category III yet declined to further reduce it to category II.  Sentencing Tr. at 7-9.  Had the Court elected to reduce the criminal history to category II, the guidelines sentence could have been as low as 121 months. Also, the Court expressed serious concerns about the gravity of Defendant's offense:

> Well, I certainly can understand and relate to your desire to generate money and funds to support your family . . . but it's very hard for me to understand any set of circumstances which counterbalance having a shopping bag full of methamphetamine underneath a car seat with an infant in the car.  I mean, proximity of these drugs to children is extremely frightening.
>
> This is not your first brush with federal felony law, as you know.  You had a 1994 federal felony charge in Los Angeles for alien smuggling, and though you've moved on, apparently, to drugs instead of alien smuggling, as you've learned the hardest way possible, it's a very serious offense."

<u>Id.</u> at 7-8.  Given the Court's evaluation of Defendant's criminal history, there is nothing in the record to support, and much to contradict, the proposition that the Court would have imposed a lesser sentence but for the guidelines.

Because Defendant has not shown that treating the sentencing guidelines as advisory would have generated a more favorable sentence, there is no need to reach the fourth and final prong.  Even if Defendant had shown prejudice, however, there is no basis on which to conclude that his sentence threatens the "fairness, integrity, and public reputation of judicial proceedings." There was no enhancement beyond the statutory range such as that which triggered the constitutional concerns in <u>Booker</u>.  The Court considered Defendant's individual circumstances and reduced his criminal history.  Defendant's sentence would likely be identical had it been imposed under advisory guidelines.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence [Docket No. 49] is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 1, 2006.